# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JERRI L. DUNN,**

               **Plaintiff,**

**-vs-**                           **Case No.  6:07-cv-1526-Orl-28DAB**

**HARRIS CORPORATION and FIDELITY
EMPLOYER SERVICES COMPANY, LLC,**

               **Defendants.**
_____

## ORDER

Plaintiff Jerri L. Dunn ("Ms. Dunn") initiated the instant action under the Employment Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"), on September 25, 2007 by filing a Complaint (Doc. 1) against Harris Corporation ("Harris").  In December 2007, she filed an Amended Complaint (Doc. 18) adding Fidelity Employer Services Company, LLC ("Fidelity") as a Defendant.  Now pending before the Court are the motions to dismiss filed by both Defendants and the motion to consolidate filed by Ms. Dunn.

### I.  Background

Ms. Dunn asserts that she is one of the designated beneficiaries of the 401(k) plan funds of one of Harris's former employees, Buddy Cox ("Buddy"), who died on March 25, 2005.  After Buddy's death, Ms. Dunn and one of Buddy's daughters, Sharon Taylor ("Ms. Taylor"), each claimed to be a 50% beneficiary of Buddy's plan funds based on an unsigned beneficiary designation form that was received by Fidelity or Harris in April 2001.  However,

also on file was a signed beneficiary designation form dated August 1990 specifying that 100% of the Plan funds were left to Buddy's son, Thomas Cox ("Dr. Cox").

Faced with the two competing claims to the funds – one by Ms. Dunn and Ms. Taylor and one by Dr. Cox – Harris's Employee Benefits Committee ("the Committee") initially determined that the first, signed beneficiary form was effective and not superseded by the second, unsigned form; thus, the Committee determined that the funds should go to Dr. Cox. Ms. Dunn asked for an administrative review of that determination.  Rather than review Ms. Dunn's appeal, in September 2005  the Committee filed an interpleader action in this Court – Case No. 6:05-cv-1388 [hereinafter Dunn I] – seeking to have this Court determine the proper beneficiary.  The Court abated that action and directed the Plan administrator to resolve Ms. Dunn's appeal.  In June 2006, the Committee resolved the appeal, reaffirming its determination that the funds should be awarded to Dr. Cox.

In August 2006, Harris moved to reopen Dunn I and renewed its motion for interpleader, seeking to interplead the benefit funds and be dismissed from the case.  No responses to that motion were filed, and in September 2006 this Court adopted the magistrate judge's recommendation – to which no objections were interposed – that the motion for interpleader be granted and that Harris be dismissed from active participation in the case, with jurisdiction retained over Harris only with regard to management of the funds pending resolution of the case.  The parties in Dunn I were then realigned, with Ms. Dunn and Ms. Taylor designated as plaintiffs and Dr. Cox designated as the defendant.  The parties were advised at that time that the Case Management and Scheduling Order that had

been entered earlier in the case governed and that if any party wished to seek amendment of it, he or she could file a motion to that effect.

More than four months later, on January 26, 2007, Ms. Dunn, through a new attorney, requested leave to file an amended Answer to add a "third-party claim" against Harris for breach of fiduciary duty based on its handling of the unsigned beneficiary designation form. (Doc. 62 in <u>Dunn I</u>).[1]  In that motion, Ms. Dunn's new counsel "acknowledge[d] that the claim made the subject of this [m]otion should probably have been pressed at an earlier date and ha[d] no explanation to offer as to why Plaintiff's former counsel did not do so."  (<u>Id.</u> at 4).  That same day, Ms. Dunn moved for leave to amend the Case Management and Scheduling Order, pursuant to which the deadline for amendment of pleadings, April 2006, had long passed.  (Doc. 63 in <u>Dunn I</u>).  As grounds for the requested leave to amend the scheduling order, Ms. Dunn stated that "there are new scheduling issues which will arise in the event the Leave to Amend [the Answer] requested by Plaintiff Dunn in a motion filed on even date

---

[1]In the proposed Amended Answer and Third Party Claim attached to the motion for leave to amend, Ms. Dunn asserted:

> Plaintiff Dunn is entitled to recovery of the death [sic] benefits . . . pursuant to the Beneficiary Designation Form . . . on the grounds that the allegedly defective Beneficiary Designation Form is in substantial compliance with the requirements necessary to give it full force and effect . . . .
>
> Alternatively, Third Party Defendant Harris is liable to Plaintiff for damages in the amount of the death [sic] benefits to which she otherwise would have been entitled had the Beneficiary Designation Form been properly handled by Third Party Defendant Harris in compliance with the fiduciary obligations under which that entity was acting in the matter.

(Proposed Am. Answer, Attach. to Doc. 62 in <u>Dunn I</u>, at 8).

herewith [is granted]."  (Id. at 2).  Ms. Dunn also moved to extend the mediation deadline. (Doc. 72 in Dunn I).  The Court granted the extension of the mediation deadline and denied the motions for leave to amend without prejudice.  (Order, Doc. 73 in Dunn I).

The parties mediated Dunn I in May 2007 but were unable to resolve it.  Ten days later, Ms. Dunn filed an unopposed motion to abate the case so that the parties could continue informal negotiations to resolve the matter.  The Court granted that motion, removed the case from the September 2007 trial calendar, and ordered the parties to file a status report by September 15, 2007.  In August 2007, Dr. Cox moved to lift the abatement because negotiations had failed.  The magistrate judge granted that motion in part and set a case management conference for September 24, 2007.

On September 21, 2007, Ms. Dunn filed a second motion for leave to amend her answer, again seeking leave to add a breach-of-fiduciary claim against Harris.  (Doc. 86 in Dunn I).  The magistrate judge denied that motion on September 25, 2007, stating that "[a]ny claim against the dismissed Plaintiff (Harris Corporation) must proceed in separate litigation." (Order, Doc. 88 in Dunn I).  The case was set on the January 2008 trial calendar.  (Id.)

The same day that the magistrate judge denied Ms. Dunn's second motion to amend her answer in Dunn I, Ms. Dunn filed the instant case, Case No. 6:07-cv-1526, against Harris.  In her Complaint, Ms. Dunn claimed entitlement to Buddy's 401(k) benefits based on the second, unsigned beneficiary designation form and, as she had in her proposed amended answer in Dunn I, alternatively alleged that "Harris is liable to Plaintiff Dunn for damages in the amount of the death benefits to which she otherwise would have been entitled had the Beneficiary Designation Form been properly handled."  (Compl. ¶¶ 24 & 25).

Harris filed a Motion to Dismiss (Doc. 14), contending that Ms. Dunn's Complaint failed to state a claim for which relief can be granted and that it is procedurally barred because her claim is a compulsory counterclaim that should have been timely brought in Dunn I. On December 14, 2007, Ms. Dunn filed an Amended Complaint (Doc. 18) adding Fidelity as a defendant.   In the Amended Complaint, Ms. Dunn recharacterizes her allegations somewhat.  She no longer refers to the requested relief as "damages," instead asserting that "[i]n the event [she] does not prevail in her claims in [Dunn I], pursuant to the provisions of 29 U.S.C.[] § 1132(a)(1)(B), Plaintiff Dunn is entitled to recover from Defendants the [401(k) plan] benefits . . . or, alternatively, to a declaration of her rights to said benefits." (Doc. 18 ¶ 31).  Alternatively, she seeks, in the event that she *does* prevail in Dunn I, attorney's fees that she has incurred in securing those benefits.  (Doc. 18 ¶ 32).

The same day that Ms. Dunn field her Amended Complaint, she also filed a motion in Dunn I for "reconsideration and bifurcation" – again seeking leave to amend her answer to add a claim against Harris, citing Harris's assertion of the "compulsory counterclaim" argument in this second case.  On January 4, 2008, Harris asked that this Court consider its arguments in the motion to dismiss with regard to the Amended Complaint rather than the initial Complaint. (Doc. 23).  On January 28, 2008, Fidelity filed its Motion to Dismiss (Doc. 26) the Amended Complaint, urging that it fails to state a claim for which relief can be granted.

A bench trial was held in Dunn I on January 29, 2008, and the Court took the matter under advisement.  On February 28, 2008 – a month after the trial in the first case – Ms. Dunn filed a Motion to Consolidate (Doc. 40) in this, the second case, stating:

> 1.   The underlying transaction and facts of the two (2) cases are identical.  The outcome of *Dunn I* has a substantial and material impact on the nature of the claims made in the instant cause of action.
>
>       . . . .
>
> 3.   Defendant Harris Corporation has interposed a defense in the instant cause of action that [the] claims asserted herein constituted compulsory counterclaims in *Dunn I*.  It is respectfully suggested that such a defense would be obviated by the granting of the instant motion.  Plaintiff Dunn should not be placed in the impossible procedural posture that leave is not granted to assert counterclaims in *Dunn I* when a Defendant herein is asserting that she had the obligation to assert those claims in *Dunn I*.
>
> 4.   There will be no prejudice to any party i[f] the relief requested herein is granted.  The underlying claims in *Dunn I* have already been tried.  There will be no delay to pre-trial process in the instant cause of action caused by allowing Plaintiff the relief necessary to ensure that her claims do not turn on procedural issues rather than the substance thereof.

(Doc. 40 at 1-2).  In an order entered today in <u>Dunn I</u>, this Court determined, as had the Harris Committee, that Dr. Cox is the rightful beneficiary of the 401(k) plan funds.

## II.  Discussion

### A.  The Motions to Dismiss

In their motions to dismiss (Doc. 43 & 44), Harris and Fidelity raise both substantive and procedural arguments for dismissal of Ms. Dunn's claims against them.  Defendants are correct in both respects; Ms. Dunn does not have a viable claim against them, and even if she did, she was required to have timely pursued it in the prior case.

*1.  Ms. Dunn cannot state a cause of action against Harris or Fidelity*

It is well-settled that ERISA provides civil enforcement mechanisms that preempt other causes of action relating to employee benefit plans.  Thus, any cause of action that Ms.

-6-

Dunn can bring against Harris must be an ERISA claim of some type.  In the Amended Complaint, Ms. Dunn purports to bring a claim under 29 U.S.C. § 1132(a)(1)(B),[2] seeking – if she does not prevail in <u>Dunn I</u>[3] – "to recover [Buddy's 401(k)] benefits."  (Doc. 18 ¶ 31).  Ms. Dunn is incorrect.

The section under which Ms. Dunn purports to bring her claim – 29 U.S.C. § 1132(a)(1)(B), provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  The issue of the "correct" beneficiary of Buddy's 401(k) plan benefits, however, has already been put before the Court in <u>Dunn I</u>.  The case was initiated by Harris as an interpleader action, but it nonetheless is the case in which the benefits determination is to be made.  There cannot be a "second" benefits determination after the determination in that case is made, especially considering that Ms. Dunn agreed to proceed with the

_____

[2]As noted by Harris in its motion (Doc. 14), in the initial Complaint (Doc. 1) Ms. Dunn did not identify the section under which she was bringing her claim.  In the Amended Complaint and in her opposition papers, however, she clarifies that she is bringing a "claim for benefits" under 29 U.S.C. § 1132(a)(1)(B).

[3] Ms. Dunn alternatively contends that if she does prevail in <u>Dunn I</u>, "Defendants are liable to Plaintiff Dunn for the attorney's fees she has incurred in securing said benefits."  (<u>Id.</u> ¶ 32).  However, this argument is moot in light of Ms. Dunn's failure to prevail in <u>Dunn I</u>.  Moreover, she has not explained why she could have not sought fees in <u>Dunn I</u> in the event she prevailed.

determination of the rightful beneficiary in that case.  Ms. Dunn's assertions to the contrary are not well-taken.[4]

Ms. Dunn has repeatedly characterized her claim based on the handling of the second beneficiary form as "a claim for benefits" based on a breach of fiduciary duty.  However, there is no such cause of action – it is either a claim for benefits or it is not.  See, e.g., Hartman v. Wilkes-Barre Gen. Hosp., 237 F. Supp. 2d 552, 557 (M.D. Pa. 2002) ("ERISA sets forth who is empowered to bring a civil action.  Courts have interpreted ERISA to mean that a plaintiff cannot sue for breach of fiduciary duties to obtain denied benefits.").  To the extent that the handling of the unsigned beneficiary designation form – i.e., the fact that it was not returned to Buddy during his lifetime for clarification of his intent – bears on the question of who is the correct beneficiary, the Court already considered it in Dunn I.  Thus, Ms. Dunn's "claim for benefits" based on mishandling (or nonhandling) of the form has already been considered.

---

[4]At one point in her opposition memorandum, Ms. Dunn states:

> Even if *Dunn I* is also a claim for those benefits, this fact does not preclude pursuit of this action against Defendant Harris.  If it comes to pass that the adjudication of *Dunn I* results in [Dunn] securing the benefits sought herein, then Defendant Harris can interpose that result as a defense on the grounds that Plaintiff should not be allowed to recover twice, but not on the basis that Defendant Harris should not have to pay twice.  If the result of *Dunn I* is that Plaintiff does not recover the benefits to which she is entitled herein, then this cause of action proceeds to judgment on Plaintiff's claim under § 502(a)(1)(B).

(Doc. 35 at 7).  This position is not well-founded, however.

Ms. Dunn does not purport to assert any claim other than a "claim for benefits," and even if she had done so her claim would fail because she has no other cause of action under ERISA available to her.   First, her claim is not viable under ERISA's "breach of fiduciary duty" section.  ERISA's civil enforcement provision states that "[a] civil action may be brought . . . by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title," 29 U.S.C. § 1132(a)(2), and section 1109 in turn provides for "[l]iability for breach of fiduciary duty."  29 U.S.C. § 1109.  However, section 1109 does not provide a remedy to Ms. Dunn.

Section 1109 provides in pertinent part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to *make good to such plan* any losses *to the plan* resulting from each such breach, and to restore *to such plan* any profits of such fiduciary which may have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a) (emphasis added).  This section has been interpreted by the United States Supreme Court as meaning "that recovery for [its violation] inures to the benefit of the plan as whole" rather than to an individual.  Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 140 (1985); accord Estate of Mattern v. Honeywell Int'l, Inc., 241 F. Supp. 2d 540, 543 (D. Md. 2003) (finding breach of fiduciary claim based on alleged failure of administrator to timely make a lump sum distribution or to advise "of the importance of a completed beneficiary designation" was not appropriately brought under § 1132(a)(2); plaintiffs "requested no relief that would inure to the benefit of the plan"); Hartman, 237 F. Supp. 2d

at 557 ("Plaintiff is seeking relief for herself, not the plan; therefore, [section 1109(a), through section 1132(a)(2),] does not provide her with the ability to raise a breach of fiduciary duty cause of action"); <u>Metro. Life Ins. Co. v. Palmer</u>, 238 F. Supp. 2d 826, 830 (E.D. Tex. 2002) (noting law of the Fifth Circuit that "a potential beneficiary may not sue for breach of fiduciary duty if he has a pending claim under section 1132(a)(1)(B) for benefits allegedly owed" and that "even if [the claim for benefits] is unsuccessful, that would not make this alternative claim for equitable relief viable").  Ms. Dunn's claim would not inure to the benefit of the plan as a whole, and thus she has no cause of action under § 1132(a)(2).

The Supreme Court's recent decision in <u>LaRue v. DeWolff, Boberg & Associates, Inc.</u>, 128 S. Ct. 1020 (2008) – submitted by Ms. Dunn as supplemental authority (<u>see</u> Doc. 41) – does not alter this result.  In <u>LaRue</u>, the Court, after noting the <u>Russell</u> holding "that a participant in a disability plan that paid a fixed level of benefits [cannot] bring suit under [section 1132(a)(2)] to recover consequential damages arising from delay in the processing of her claim," examined the issue of "whether [section 1132(a)(2)] authorizes a participant in a defined contribution pension plan to sue a fiduciary whose alleged misconduct impaired the value of plan assets in the participant's individual account." 128 S. Ct. at 1022.  Refining <u>Russell</u> to some extent, the <u>LaRue</u> Court held "that although [section 1132(a)(2)] does not provide a remedy for individual injuries apart from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." <u>Id.</u> at 1026.

<u>LaRue</u> does not benefit Ms. Dunn.  The Court's holding was based on the "changed landscape" of employee benefit plans, which now, the Court noted, is dominated by defined

contribution plans rather than defined benefit plans.  See id. at 1025.  The LaRue Court held

that a suit for losses to an account could go forward in the defined contribution plan context

even though only an individual account was affected rather than the whole plan.  This

holding does not mean that an alleged beneficiary like Ms. Dunn can seek benefits based

on a breach of fiduciary duty or bring a breach of fiduciary duty claim after being found not

to be the rightful beneficiary.

Finally, the only other ERISA provision under which Ms. Dunn could potentially bring

suit[5] is 29 U.S.C. § 1132(a)(3), but she does not have a claim under this section either.  This

section provides that "[a] civil action may be brought . . . by a participant, beneficiary, or

fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or

the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such

violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  The

relief Ms. Dunn seeks is not equitable in nature, and thus she does not have a cause of

action under § 1132(a)(3).  See, e.g., Kmatz v. Metro. Life Ins. Co., 232 Fed. Appx. 451, 457

(6th Cir. 2007) ("The estate has already raised – and lost – a denial-of-benefits claim under

§ 1132(a)(1). . . . Neither § 1132(a)(2) nor [1132(a)(3)] supplies the sort of remedy that the

estate seeks – money damages."); Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609,

615 (6th Cir. 1998) (noting that the Supreme Court has "limited the applicability of §

1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies" and

that where claimant had available to him "a lawsuit to challenge the Plan Administrator's

---

[5]The other provisions of ERISA's civil enforcement section, 29 U.S.C. § 1132(a),
clearly do not apply here.

denial of benefits to which he believes he is entitled, he does not have a right to a cause of action for breach of fiduciary duty pursuant to § 1132(a)(3)" and where "the district court reviewed his claim de novo and concluded that [the] denial of benefits was correct" the plaintiff "has no cause of action under any other subsection of § 1132") (citing Varity Corp. v. Howe, 516 U.S. 489, 512, 515 (1996)); Hartman, 237 F. Supp. 2d at 557 ("This section [§ 1132(a)(3)] is also inappropriate for the plaintiff.  She is seeking payment of benefits that she claims are due to her. . . . [A] claim for money due and owing is not equitable relief and does not fall under this section."); Roig v. The Ltd. Long Term Disability Program, No. CIV.A. 99-2460, 2000 WL 1146522, at *10 (E.D. La. Aug. 4, 2000) ("Plaintiff's breach of fiduciary duty claim is merely a disguised claim for failure to pay benefits.  The only damages she seeks to recover are benefits allegedly due, along with interest, reasonable attorney's fees[,] and costs.  These remedies are all available to her under section 1132(a)(1)(B), and the Plan is properly before the Court.  Because section 1132(a)(1)(B) provides an appropriate remedy, plaintiff's breach of fiduciary [duty] claim is not viable under section 1132(a)(3)."); Strohmeyer v. Metro. Life Ins. Co., No. 3:04cv1808(WWE), 2005 WL 3963770, at *2 (D. Conn. Nov. 15, 2005) ("[C]ompensatory damages or monetary relief for all losses sustained as a result of alleged wrongful conduct are not recoverable under section 1132(a)(3).").

In sum, Ms. Dunn has no claim against Harris or Fidelity other than a claim for benefits.  To the extent the handling of the unsigned beneficiary form bears on the question of whether Ms. Dunn (along with Ms. Taylor) or Dr. Cox is the rightful claimant to Buddy's 401(k) benefits, the handling of the form has already been considered in the beneficiary determination in Dunn I.  And, although she does not purport to bring a claim for breach of

-12-

fiduciary duty under § 1132(a)(2) or a claim for "other relief" under § 1132(a)(3), even if she had attempted to bring such claims they would fail for the reasons set forth above.  Thus, the motions to dismiss are due to be granted for failure to state a claim on which relief can be granted.

 *2.  Even if Ms. Dunn had a cause of action, she was required to bring it in <u>Dunn I</u>*

 Even if Ms. Dunn had a cause of action under the statute apart from the beneficiary dispute at issue in <u>Dunn I</u>, her claim would nevertheless be procedurally barred by her failure to timely raise such a claim in that earlier litigation.  Ms. Dunn argues that it would be unfair to preclude her from bringing this second suit after her requests to amend were denied in <u>Dunn I</u>, but she is mistaken.

 The procedural history of <u>Dunn I</u> is somewhat convoluted.  The case was brought by Harris as an interpleader action when it was in doubt about to whom it should pay the benefits.  The Court abated the action so that Harris could "finish what it started" and resolve the administrative appeal Ms. Dunn raised; in abating the action, the Court advised the parties that "upon final resolution, any party may return to this Court upon proper motion and seek review of the decision."  (Order, Doc. 51 in <u>Dunn I</u>, at 1-2).  When the administrative committee completed its review and reaffirmed the determination that Dr. Cox was the rightful beneficiary, Ms. Dunn and Ms. Taylor advised Harris that they would not release their claims to the fund, and Harris then moved to reopen the abated case and renewed its motion for interpleader.  (<u>See</u> Doc. 56 in <u>Dunn I</u>).  No one objected to this motion or to the magistrate judge's Report recommending that it be granted in part and denied in part.

 In that Report (Doc. 57 in <u>Dunn I</u>), the magistrate judge stated:

-13-

> The Court finds that interpleader is appropriate and the dismissal
> of [Harris] (without prejudice at this time) should be granted,
> conditioned on [Harris's] continued stewardship of the Fund,
> pending resolution of the competing claims. . . . [T]here is no
> suggestion that Harris has a personal interest in the Fund for its
> own use of benefit.  Simply put, Harris is not itself a claimant for
> the Fund and does not dispute that the appropriate
> beneficiary(s) are among the Defendants.  Moreover, . . . no
> party has filed a response to the motion in opposition to the relief
> sought, nor are there any counterclaims against Plaintiff, or any
> other issue which would preclude the withdrawal of Plaintiff.  As
> such, the request for dismissal should be granted.

(Report & Recommendation, Doc. 57 in <u>Dunn I</u>, at 5) (footnote omitted).  In a footnote, the

Report noted, "Dunn has raised several affirmative defenses such as estoppel and waiver,

but these defenses relate to the ultimate issue of the identity of the proper beneficiary[,] an

issue which Harris now claims no interest in.  While the factual circumstances of the case

no doubt suggest that Harris, the Committee and perhaps Fidelity employees may be called

upon as witnesses in this litigation, the Court sees no reason to compel Harris to remain a

party, if it does not wish to be so."  (<u>Id.</u> at 5 n.6).  No objections to the Report were filed, and

this Court adopted it, granted the interpleader motion, and dismissed Harris from the case

without prejudice, remaining subject to this Court's jurisdiction only with regard to

maintenance of the funds.  (Order, Doc. 58 in <u>Dunn I</u>).

Not until four months later did Ms. Dunn attempt to add a "counterclaim" against

Harris based on its alleged breach of fiduciary duty in connection with the unsigned

beneficiary designation form.  Ms. Dunn's attempted assertion of this claim for the first time

in January 2007 was both late and improper.

The very point of interpleader is to avoid multiple suits and resolve multiple claims to a fund.  "Interpleader's primary purpose is not to compensate, but rather to protect stakeholders from multiple liability as well as from the expense of multiple litigation." Aetna Life Ins. Co. v. Bayona, 223 F.3d 1030, 1034 (9th Cir. 2000).  Harris moved for interpleader in the first case so the Court could determine the beneficiary of "the stake" – Buddy's 401(k) benefits.  No one – including Ms. Dunn – objected to the interpleader, even after being put on notice that with the granting of the interpleader motion Harris would be dismissed as a party to the suit.  By not objecting to the interpleader, Ms. Dunn waived her right to pursue claims related to the interpleaded funds.  See, e.g., Metro. Life Ins. Co. v. Barretto, 178 F. Supp. 2d 745, 748 (S.D. Tex. 2001) ("Were the defendants in an interpleader action permitted to carry forward with counterclaims against the stakeholder based upon the same interpleaded funds, the very purpose of the interpleader action would be utterly defeated.") (citations and quotation marks omitted).  Essentially, interpleader is a call to all claimants to a fund to put forth their claims so that entitlement to the fund can be determined.  Ms. Dunn agreed to the interpleader as the means of resolving the competing beneficiary forms, and any claims or arguments related to the fund should have been made in Dunn I.

Although Ms. Dunn contends that injustice would result if the Court does not allow her to proceed in this case after having denied her motion to amend her answer in the first case, the problem – again, assuming that Ms. Dunn had a claim to bring at all – is of Ms. Dunn's own making.  If she had a claim to raise with regard to the funds, she could have raised it in the first case – by objecting to the interpleader or by otherwise filing a claim.  She did not do so in a timely fashion, and she even agreed to the trial proceedings going forward in

January.  A party is not relieved of its obligation to timely raise issues merely by filing a second lawsuit.  Even if Ms. Dunn had a viable claim against either Harris or Fidelity, she had to timely pursue it in the first case.  Cf. Metro. Life Ins. Co. v. Kubichek, 83 Fed. Appx. 425, 430 (3d Cir. 2003) (finding that claims for breach of fiduciary duty, based on losing or misplacing beneficiary form in which decedent allegedly named claimant as beneficiary, were barred because they "were compulsory counterclaims that should have been asserted in the interpleader action").

B.  The Motion to Consolidate

Because the Court has concluded that the motions to dismiss are well-taken and that the action must be dismissed – and because the other case has already been concluded – the motion to consolidate (Doc. 40) is moot and will be denied as such.

III.  Conclusion

To the extent Ms. Dunn is seeking to recover "benefits" – as she now purports to be doing – such a claim has already been put at issue and decided in Dunn I, and in that case the Court considered the fact that the unsigned beneficiary designation form was received by either Harris or Fidelity and was not returned to Buddy.  Ms. Dunn may not seek "benefits" again where the issue of who was the rightful beneficiary of those benefits was – with her acquiescence – already tried to the Court in the first suit.  Moreover, even if Ms. Dunn couched her claim in other terms – i.e., as a claim for breach of fiduciary duty or "other equitable relief" – she essentially would be seeking money damages and has no cause of action.  The motions to dismiss of both Harris and Fidelity must be granted.

-16-

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.  Defendant Harris Corporation's Motion to Dismiss (Doc. 14) is **DENIED as moot** insofar as it is directed at the initial Complaint and is **GRANTED** insofar as the Court construes it, as requested by Harris, as directed at the Amended Complaint (Doc. 18).

2.  Defendant Fidelity Employer Service Company's Motion to Dismiss (Doc. 26) is **GRANTED**.

3.  Plaintiff's Motion to Consolidate (Doc. 40) is **DENIED as moot**.

4.  This case is **DISMISSED**.  The Clerk is directed to enter a judgment providing that Plaintiff Dunn shall take nothing from the Defendants in this action.  Thereafter, the Clerk shall close this file.

**DONE** and **ORDERED** in Orlando, Florida this 6th day of June, 2008.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party